**Robert Lee VIATOR**

v.

**HELLENIC LINES, LTD.**

**Civ. A. No. B–80–463–CA.**

United States District Court,
E.D. Texas,
Beaumont Division.

March 14, 1983.

Carl Waldman, Waldman & Smallwood, Beaumont, Tex., for plaintiff.

Louis Beard, Wells, Peyton, Duncan, Beard, Greenberg, Hunt & Crawford, Beaumont, Tex., for defendant.

Robert A. Black, Mehaffy, Weber, Keith & Gonsoulin, Beaumont, Tex., for intervenor.

## MEMORANDUM OPINION

JOE J. FISHER, District Judge.

Plaintiff, Robert Lee Viator, brought this action against Defendant Hellenic Lines, Ltd., pursuant to the Longshoremen's and Harbor Workers Compensation Act, 33 U.S.C. § 905(b). Atlantic and Gulf Stevedores, Inc., (Intervenor), who was the Plaintiff's employer at all times relevant to this action, intervened, seeking to recover compensation payments made to the Plaintiff in accordance with the Act. All of these parties are properly before the Court, and jurisdiction is uncontested.

On August 11, 1979, the Plaintiff was a member of the Atlantic and Gulf Stevedores' gang assigned to load the No. 1 hold of the SS HELLENIC CARRIER. The HELLENIC CARRIER was owned and operated by Hellenic Lines, Ltd., the Defendant herein. This vessel was equipped with two hydraulic winches for the No. 1 hold. These winches will be hereafter referred to as the port winch and the starboard winch. The port and starboard winches are linked to a center operational console by two connecting rods, one extending from each of the winches to the center console. When these connections are in proper working order, both winches can be operated by one man at the center console.

Before commencing loading operations, two of the Intervenor's employees inspected the cargo loading gear aboard the HELLENIC CARRIER. Upon this inspection, it was learned that the port winch could not be operated from the center console because the connecting rod was unattached to the center console. Hence, a winch operator was required for each of the two winches. Atlantic and Gulf Stevedores then requested that two operators be assigned to the winches. Defendant did not object to this request.

Loading operations in the No. 1 hold then began at around 7:00 a.m. and the Plaintiff was assigned to operate the defective port winch. In an attempt to gain greater leverage and thus make the port winch easier to operate, the Plaintiff began operating the port winch by using the unattached connecting rod. The work was still difficult, and the Plaintiff complained to Vergil Gill, his foreman, that the port winch was difficult to operate and that the connecting rod needed to be fixed, so that the winch could be safely operated from the center console. Mr. Gill immediately brought the defect to the attention of the HELLENIC CARRIER'S Chief Mate. The Chief Mate examined the winch and said that he could not fix it.

Maintenance and repair of the winch was the sole responsibility of the ship's crew and thus of the Defendant. The Chief Mate did not order one of the ship's maintenance crew to examine or repair the winch.

The Plaintiff recommenced loading the flour, but with the same difficulties. He complained again. Even after a second complaint, the Chief Mate did not order the winch examined or repaired. The Defendant's own expert witness, Captain Grace, acknowledged that the Chief Mate should have ordered the winch repaired or stopped operation of the winch. The Chief Mate did neither.

After this second complaint to the Chief Mate, Mr. Viator recommenced loading the flour. At approximately 8:45 a.m., the universal joint connecting the connecting rod to the winch broke, causing Mr. Viator to fall backwards and trip over a cable on the winch deck. He fell on his back, and suffered the injuries complained of.

The cable upon which Mr. Viator tripped was not stowed properly. The crew of the SS HELLENIC CARRIER was responsible for the proper stowing of the cable. The presence of the cable on the winch deck represented a hazardous condition, and that condition was a proximate cause of the Plaintiff's fall and his injuries.

The port winch and the connecting rod were so clearly unsafe that the plaintiff

should have, and he indeed did, report the condition to the shipowner. These defects in the port winch and connecting rod posed an unreasonable risk of harm to Robert Viator and other longshoremen. Hellenic should have stopped the loading operation until the winch could be made safe. There are circumstances in which a shipowner has a duty to act where the danger to longshoremen arises from the malfunctioning of the ship's gear being used in the cargo operations. *Scindia Steam Navigation Co. v. DeLos Santos,* 451 U.S. 156, at p. 175, 101 S.Ct. 1614, at p. 1626, 68 L.Ed.2d 1 (1981). [I]f the shipowner should anticipate that the stevedore will not or cannot correct the danger and that the longshoremen cannot avoid it, then the shipowner's duty is triggered to take reasonable steps to eliminate or neutralize the hazard. *Scindia,* supra, at p. 175, 101 S.Ct. at p. 1625–26.

The failure of Hellenic Lines' representative to stop the loading operation until the port winch was repaired was a proximate cause of the accident made the basis of the present lawsuit and of the injuries sustained by the Plaintiff. The failure of the Plaintiff to cease operating the winch was also a proximate cause of this accident and of his injuries. The percentage of negligence attributable to the Defendant in proximately causing the Plaintiff's injuries is 75%. The percentage of negligence attributable to the Plaintiff in contributing to his injuries is 25%.

The Plaintiff injured his right arm, shoulder, and neck in the accident. Additionally, the Plaintiff sustained at least a 2% permanent partial disability to his right arm and shoulder and a 15–20% permanent disability due to his neck injury. As a direct result of the accident of August 11, 1979, the Plaintiff has undergone two (2) cervical fusions, including a fusion of the L4, L5 and L6 vertebra.

The Plaintiff has lost past wages of at least $100,000.00, including fringe benefits lost. He has incurred a diminution of his future earning capacity. A reasonable sum to compensate him for this loss is $175,000.00. The Plaintiff has additionally incurred reasonable and necessary past medical expenses of $20,900.00. Also, the Plaintiff will likely incur future medical expenses in the amount of $3,500.00. He has suffered significant amounts of physical pain and suffering from August 11, 1979 to date, for which reasonable compensation is $50,000.00. Moreover, the Plaintiff will likely incur physical pain and suffering in the future, for which reasonable compensation is $25,000.00. On August 11, 1979, Plaintiff was a 40-year old white male with a life expectancy of 31.8 years, and a work life expectancy of 25 or more years.

The Intervenor has paid to the Plaintiff through February 16, 1983, $56,068.14 in compensation benefits under the applicable portions of the Longshoremen's and Harbor Worker's Compensation Act.

The Court awards pre-judgment interest on the total amount of the judgment at the rate of 9% per annum from August 11, 1979 to date of judgment and interest on the judgment at the rate of 8.99% per annum thereafter until the judgment is paid.

A judgment shall be entered in which the Plaintiff shall recover against the Defendant the sum of $280,820.00 and that the Intervenor herein recover in full from the first monies received by the Plaintiff the full amount of its subrogation lien. All costs of court are taxed against the Defendant.